IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RUTH J. MCNULTY | * | CIVIL ACTION NO. 2:18-cv-1372 |
| | * | |
| Plaintiff, | * | JUDGE |
| vs. | * | |
| | * | MAGISTRATE JUDGE |
| COX MEDIA GROUP, LLC | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

1. This is an action to halt and seek redress for the unlawful discrimination on the basis of race and retaliation that the defendant has implemented in its business practices.

2. Title VII of the Civil Rights Act of 1964 ("CRA") makes it illegal to discriminate against someone on the basis of race, color, religion, national origin, or sex.  42 U.S.C. §§ 2000e, *et seq.*

3. Despite these mandated provisions, the defendant has violated the Plaintiff's rights.

## PARTIES

4. The Plaintiff is Ms. Ruth J. McNulty ("Ms. McNulty") who was employed by Cox Media Group, LLC in Lafayette, Louisiana.  She is a person of the age of majority, identifies as African-American, and is female.

5. The Defendant is Cox Media Group, LLC ("Cox").  It is a foreign limited liability company that is not registered to do business in Louisiana, yet consistently does business in Louisiana anyway. Their home office is in Atlanta, Georgia and is located at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Yet, even in Georgia, Cox is registered as a foreign entity.

## FACTUAL BACKGROUND

6. Ms. McNulty was hired by Cox in April of 2006.

7. Her current title is Account Executive/Sales Consultant.

8. In that role, Ms. McNulty is required to follow up on leads for advertising purchases and develop new accounts. She is also required to work with existing accounts to increase their media buys.

9. Ms. McNulty's pay is based on commission and salary.

10. The commission is based on a percentage of sales (including ongoing performance of accounts).

11. The salary is based on a percentage of "budget."

12. The "budget" is also calculated based on the anticipated performance of accounts assigned to that particular Account Executive/Sales Consultant.

13. In essence, all pay is directly related to sales.

14. Unfortunately, this pay structure is not completely based on merit.

15. The administration has a fair amount of ability to manipulate results.

16. For example, Cox employs one person to process new leads. That employee has a fair amount of discretion as to how she assigns those leads and how those leads are eventually given to Ms. McNulty and/or her coworkers.

17. Incoming calls can also be routed in a number of different ways, meaning that incoming potential clients are not all assigned fairly or equally.

18. Further, the local sales manager, Gwen Cook, has the ability to assign leads and even to move performing accounts to different Account Executives/Sales Consultants.

19. Ms. McNulty has routinely been assigned the accounts that are associated with black-owned businesses to the exclusion of accounts that are owned by non-black persons.

20. Ms. McNulty would not be assigned these accounts but for the fact that Ms. McNulty is black.

21. For whatever reason, the black-owned businesses purchasing media and advertising from Cox tend to be small businesses with lower advertising budgets than other businesses – all equaling less pay for Ms. McNulty.

22. When any businesses (including black-owned businesses) have been developed into larger accounts by Ms. McNulty, Cox has then taken the accounts away from Ms. McNulty and given them to one of her white counterparts – all at the loss of salary and commission for Ms. McNulty.

23. When Ms. McNulty inquired as to why she could not also be given high-performing accounts from other counterparts, she was told that it would be unfair to take commissions away from others and give those commissions to her.

24. In other words, it is acceptable in that office for Cox to take away commissions from their only black Account Executive/Sales Manager but not from their white Account Executives/Sales Managers.

25. When large accounts or agencies call in regarding purchasing advertising, those are redirected to white Account Executives/Sales Managers.

26. Agencies are attractive customers for Cox because they tend to do the majority of the client interfacing. They will be lower maintenance, they will more likely know exactly what they need, and from a client maintenance stand point there is little development that needs to be done.

27. New agencies are typically assigned to white Account Executives/Sales Managers.

28. Account Executives/Sales Managers have budget expectations to meet.

29. Because Ms. McNulty is given such small accounts, she is required to work three to four times harder to meet these budget requirements than her white counterparts.

30. Again, large accounts are redirected away from Ms. McNulty by others at every opportunity.

31. For example, Ms. McNulty was working a very large lead for a national furniture chain.

32. She cleared that lead with her Sales Manager.

33. But, when she reported in a sales meeting that she was about to close the lead and convert it to a client, the lead was taken away from her and she was accused of concealing this lead from her supervisor.

34. White employees in that office have consistently been treated better.

35. For example, a white employee that processes new leads falsely reported that she attended a meeting with a lead and Ms. McNulty.

36. As a result, when Ms. McNulty later converted that lead to a client, the white employee was compensated with a portion of Ms. McNulty's commission.

37. Upon information and belief, that employee was not punished nor reprimanded.

38. Instead, Ms. McNulty had to engage in a long campaign to get her entire commission – again putting in many more hours than her white counterparts.

39. Ms. McNulty spoke to Human Resources and the Vice President's office about these racial issues.

40. Instead of getting better, they got worse. HR did not even address the issues, but instead accused Ms. McNulty of having low self-esteem and directed her to keep working.

41. The Local Sales Manager is supposed to spend time with each Account Executive/Sales Manager and discuss ways to improve and performance.

42. During these meetings the Manager will engage with the subordinate.

43. When it is Ms. McNulty's turn for these meetings, the Manager will take other calls and will refuse to speak with Ms. McNulty or provide any advice.

44. Additionally, Gwen Cook, the Local Sales Manager, would go on sales calls with Ms. McNulty's white peers for purposes of training and development but would not do so for Ms. McNulty.

45. The redirecting of accounts has continued and not gotten any better.

46. Instead, Gwen Cook has been on a campaign to retroactively make it appear as though Ms. McNulty was a sub-employee, an allegation that bears no relationship to fact.

47. Additionally, the white peers are simply treated differently than Ms. McNulty.

48. For example, one of the white employees, Dana was assigned to go to all new client meetings for all Account Executives/Sales Managers. This is within Dana's job description.

49. Upon witnessing Dana's overly aggressive sales style, Ms. McNulty requested that Dana not go with Ms. McNulty to any more meetings. This request was made to Gwen Cook, the Local Sales Manager.

50. Gwen Cook stated that Dana would still be forced to go with Ms. McNulty.

51. Ms. McNulty later found out that one of her white peers, Brian, on the other hand, is permitted to not bring Dana with him to new lead meetings.

52. Similarly, Gwen Cook assigned Ms. McNulty to come up with three new ideas to prospect for new and larger clients.

53. Ms. McNulty complied, and Gwen Cook said all three ideas were not approved.

54. Gwen Cook then took two of those three ideas to a white peer and asked her to implement them.

55. Even when Ms. McNulty has excelled in her job, the inherent racism manages to spoil the moment.

56. Ms. McNulty's white peers are frequently and publicly praised for their accomplishments.

57. Ms. McNulty became the first person in Louisiana to win the National Winners Circle Award.

58. Gwen Cook refused to acknowledge the award and indicated it must have been a mistake.

59. Ever since Ms. McNulty won this award, her pay (set by her white supervisors) has started to decline each year.

60. Ironically, Ms. McNulty is treated as an outsider by her white peers and white coworkers, but if Gwen Cook sees her talking to a black female worker in another department, Ms. McNulty is admonished.

61. As a result of this type of behavior and the stress that this treatment has placed upon Ms. McNulty, she has been forced to seek counseling and has been diagnosed with anxiety.

62. Further, Ms. McNulty has missed out on significant funds both in terms of commission and salary.

63. This is not the case for her white peers.

## JURISDICTION AND VENUE

64. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

65. Ms. Corkern timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination and retaliation.

66. The EEOC has issued a right to sue letter.

67. Accordingly, this suit may be properly filed.

68. Venue is proper because the discrimination occurred in this District.

69. The Court has jurisdiction over the Defendant because it is located and operates in the State of Louisiana.

### COUNT I: VIOLATIONS OF THE EQUAL PAY ACT

70. The preceding paragraphs are incorporated as if fully stated herein.

71. The EPA specifically provides that "no employer" may discriminate "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

72. The EPA protects every "employee" engaged in, or employed by an "enterprise" engaged in, commerce or in the production of goods for commerce. 29 U.S.C. § 203(e)(1); 29 U.S.C. § (a)(1)(A)(i).

73. Cox lowered Ms. McNulty's compensation annually, while simultaneously increasing the compensation paid to white and male employees.

74. However, these white and male employees who earned substantially greater incomes performed job functions requiring equivalent or lesser skill, effort and responsibility.

75. Despite the similarity in the worked performed, Cox paid Ms. McNulty substantially less in violation of the EPA.

### COUNT II: VIOLATIONS OF TITLE VII – RACE DISCRIMINATION AND RETALIATION

76. The preceding paragraphs are incorporated as if fully stated herein.

77. Title VII of the Civil Rights Act prohibits employment discrimination on the basis of gender identity. 42 U.S.C. § 2000e-2.

78. More particularly, "it shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

79. In order to show discrimination, the plaintiff must show that she is (1) belongs to a protected class; (2) was qualified for the job; (3) was subjected to an adverse employment action; and (4) the employer gave better treatment to a similarly-situated person outside the plaintiff's protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

80. Ms. McNulty, as a female and a black individual, is a member of a protected class.

81. She was qualified to be Cox's Account Executive/Sales Manager and worked in that position for approximately six years.

82. Cox subjected her to adverse employment action when it reduced her pay, diverted leads away from her, reduced her commissions, and committed the other acts described above.

83. Meeting the fourth factor, Cox's white employees who were paid more for equivalent work and treated better are, as white persons, clearly outside of Ms. McNulty's protected class.

84. After Ms. McNulty complained about her disparate treatment she was forced to endure further adverse employment actions and was not given a proper opportunity to work with the Local Sales Manager for improvement.

85. These actions were in retaliation to Ms. McNulty's complaints of discrimination.

**COUNT III: VIOLATION OF LOUISIANA EMPLOYMENT DISCRIMINATION LAW**

86. The Louisiana Employment Discrimination Law requires that a covered employer may not discriminate on the basis of race, color, religion, sex, or national origin. La. R.S. 23:301 *et seq.*

87. Cox employs far more than twenty full time employees and is a covered employer.

88. As detailed in the Title VII allegations immediately above, Ms. McNulty suffered discrimination on the basis of race.

89. As such, Cox is in violation of the Louisiana Employment Discrimination Law.

## JURY TRIAL REQUEST

Plaintiff hereby notifies the Court and Defendants of her intent to seek a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor and against Defendant, including the following relief:

a. Appropriate injunctive relief, including but not limited to an order restraining Defendant from engaging in further discriminatory conduct of the types alleged in this Petition,

b. Compensatory and consequential damages,

c. Punitive damages against Defendant;

d. Pre-judgment and post-judgment interest at the highest lawful rate,

e. Attorney's fees and costs of this action, and

f. Any such further relief as the Court deems appropriate.

DATED: October 21, 2018

Respectfully submitted:

/s/ Galen M. Hair
Galen M. Hair, T.A., LSBA No. 32865
John E. Bicknell, Jr. LSBA No. 36802
**SCOTT, VICKNAIR,**
**HAIR & CHECKI, LLC**
909 Poydras Street, Suite 1100
New Orleans, LA 70112
T: (504) 684-5200
F: (504) 613-6351

Summons will be filed with Complaint.