## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE   DIVISION

McNulty                                               Civil Action No. 18-01372

Versus                                                Judge Michael J Juneau

Cox Media Group LLC                    Magistrate Judge Carol B Whitehurst

## REPORT AND RECOMMENDATION

Before the Court, upon assignment from the district judge, is a Motion to Dismiss filed by defendant, Cox Communications Louisiana, LLC ("Cox")[1] [Rec. Doc. 9], Plaintiff, Ruth J. McNulty's, Memorandum In Opposition [Rec. Doc. 11] and Cox's Reply thereto [Rec. Doc. 14]. For the reasons that follow, the Court will recommend that the Motion be denied in part and denied in part without prejudice to Cox's right to reurge.

## I.  BACKGROUND

This case arises as a wage discrimination suit. Plaintiff alleges that she began working as an Account Coordinator for Cox in April 2006. *R. 3, ¶ 6.* Her last title was Account Executive/Sales Consultant. *Id. at ¶ 7.* For the last eight years, she

---

1 Plaintiff named Cox Media Group LLC as the defendant in its initial Complaint filed on October 21, 2018. *R. 1.* On November 11, 2018, Plaintiff filed an Amended Complaint correcting the named defendant to Cox Communications Louisiana LLC. *R.3.* Because the allegations in both complaints are the same, the Court will refer to Record Document 3 as the "Complaint.*"*

1

worked under the Local Sales Manager, Gwen Cook. Plaintiff's pay was based on commission and salary. *Id. at ¶ 9.* Her commission was based on a percentage of sales (including ongoing performance of accounts), and her salary was based on a percentage of "budget." *Id. at ¶¶ 10-11.* The "budget" was also calculated based on the anticipated performance of accounts assigned to that particular Account Executive/Sales Consultant. *Id. at ¶ 12.*

Plaintiff alleges that the Cox administration "has a fair amount of ability to manipulate results." *Id. at ¶ 15.* In particular, she alleges that "Cook has the ability to assign leads and even to move performing accounts to different Account Executives/Sales Consultants" (Plaintiff and/or her coworkers). *Id. at ¶¶ 15, 16.* Plaintiff alleges that, because she is black, she was routinely assigned the accounts associated with black-owned businesses—typically small businesses with lower advertising budgets—to the exclusion of accounts owned by non-black persons or agency accounts—larger and more lucrative. *Id. at ¶¶ 19, 20, 21, 25-27.* She further alleges that when she developed any businesses, black or white, into larger accounts, Cook took her accounts and gave them to one of Plaintiff's white counterparts. *Id. at ¶ 22.* As a result of the foregoing treatment, Plaintiff alleges she lost salary and commission, *Id. at ¶ 22;* she had to work "three to four times harder" than her white counterparts in order to meet the "budget" requirements, *Id. at ¶29;* and her white

counterparts were treated better, *Id. at ¶ 34 – 37, 47, 51, 54.*

Plaintiff alleges three Counts: (I) Violations of the Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d), for discrimination on the basis of sex by paying wages to employees at a rate less than the rate of pay of employees of the opposite sex for equal work, requiring equal skill, effort and responsibility, under similar working conditions, *Id. at ¶ 71;* (II) Violations of Title VII— Race Discrimination and Retaliation, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), as Plaintiff, a black female, was subjected to adverse employment action when Cox gave better treatment to similarly-situated persons outside Plaintiff's protected class by *inter alia,* reducing her pay, diverting leads away from her, reducing her commissions, and retaliation after she complained about this disparate treatment, *Id. at ¶¶ 82 – 84*; and (III) Violation of Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301 *et seq*. for race discrimination.

Cox filed the instant motion to dismiss pursuant to Rule 12(b)(6) asserting that the Court should dismiss all of Plaintiff's claims for failure to satisfy the requirements under the EPA, Title VII and the LEDL. *R. 9-1, pp. 1, 16.* The Court will address Cox's Motion as follows.

## II. LEGAL STANDARD

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 239 (5th Cir.2009. But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. Id. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Id. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level,

or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir.2007).

### III. LAW AND ANALYSIS

Plaintiff asserts federal claims under Title VII for discrimination based on her race and her gender (black female) and for retaliation, as well as a claim under the EPA. She also asserts a state law claim for employment discrimination under the LEDL. Cox contends that Plaintiff cannot assert a claim for sex discrimination under Title VII because her EEOC charge of discrimination ("Charge") does not identify sex as a basis for discrimination. Cox further contends that Plaintiff's Title VII claims fail because her allegations do not establish an adverse employment action, as required under the Act. As to her EPA claim, Cox argues that Plaintiff's allegations address only racial discrimination and the EPA applies solely to discrimination based on sex. Finally, Cox contends that because Plaintiff's EEOC Charge fails to claim sex discrimination and because she failed to provide Cox with written notice of her lawsuit, her LEDL claim related to sex discrimination should be dismissed without prejudice. The Court will address each claim separately as follows.

## A. Title VII

### 1. Exhaustion of Administrative Remedies

Title VII requires that a plaintiff must first exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of any such misconduct. 42 U.S.C. § 2000e-5(e)(1). Because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint is liberally construed to determine whether a plaintiff has administratively exhausted a particular claim. *Patton v. Jacobs Eng'g Grp., Inc*., 874 F.3d 437, 443 (5th Cir. 2017) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "'On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt[ing] to achieve non-judicial resolution of employment discrimination claims.'" *Id*. (quoting *Pacheco*, 448 F.3d at 788-89). Balancing these considerations requires a court to interpret "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id*. (quoting *Pacheco*, 448 F.3d at 789). Thus, a court engages in a "'fact-intensive analysis of the statement given by the plaintiff in the administrative charge and

6

look[s] slightly beyond its four corners, to its substance rather than its label.'" *Id.*

(quoting *Pacheco*, 448 F.3d at 789). As the Fifth Circuit explained:

> Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

On February 22, 2018, Plaintiff filed a Charge of Discrimination with the

EEOC ("the Charge"). Plaintiff defined the time period applicable to her Charge as

"10-01-2017." The Charge stated in pertinent part:

> I was hired by Cox Media in April 2006, most recently as an Account Executive/Sales Consultant. I have been subjected to harassment because of my race (Black) and retaliated against after filing multiple complaints with Ms. Jackie Sonnier, Human Resources, most recently as of January 2018, about unfair treatment and harassment by Gwen Cook, Local Sales Manager. Ms. Cook has harassed and retaliated against me by taking my larger accounts from me and assigning to other Caucasian coworkers; not allowing me to earn the same opportunities in pay as other Caucasian coworkers. I do not have the same opportunity my white peers have. When a large business/agency call [*sic*] in to advertise the account goes to my white peers. I only get small accounts and most of the small black accounts or one-time billing accounts. I must deal with harassment, retaliation an [*sic*] unequal treatment from Gwen each time I report something to HR. In January 2018, I prospect [*sic*] a large account and it was taking [*sic*] away from me. I must work 10 times harder than my peers to meet my budget. 3-4 accounts to their one account. According to the company, nothing has been done. I believe I have been discriminated against because of my race, and retaliated against after filing a complaint, in violation of Title

VII of the Civil Rights Act of 1964, as amended; and in violation of the Equal Pay Act, as amended.

*R. 9-2*. On July 25, 2018, the EEOC issued Plaintiff a Right to Sue letter indicating her rights as to Title VII as well as the Equal Pay Act (EPA). *Id., p. 3.*

While Cox does not disagree that Plaintiff's EEOC Charge states claims for Title VII discrimination based on race and retaliation, Cox argues that Plaintiff failed to identify sex in her charge as a basis for discrimination. Cox contends that because she marked only the boxes for race and retaliation and did not mention "sex" in the charge's "Particulars," she failed to exhaust administrative remedies and cannot now assert an additional theory of sex discrimination in this lawsuit.

Here, Plaintiff's EEOC Charge stated that she suffered discrimination "in violation of Title VII ...; and in violation of the Equal Pay Act...." *R. 9.2*. She raised equal pay claims describing several incidences of pay disparity which she suffered based on Cox's alleged discriminatory actions related to her pay and ability to earn. While Plaintiff's Charge specifically made these claims as to her "race" and described her "white peers," it also alleged that she worked "harder than my peers to meet my budget" and, as previously stated, alleged violation of the EPA [2].

2 As Cox adamantly points out in its Motion, "the Equal Pay Act does not extend protections to unequal pay based on *race*. Rather, the Equal Pay Act only extends protections to unequal pay based on *sex*." *R. 9-1, p. 6*

Significantly, the allegations contained in Plaintiff's Charge are identical under her Title VII claim[3] and her EPA claim[4] regardless of whether they are race-based or gender-based. Reading Plaintiff's Charge "somewhat broadly," the Court finds that the Charge triggered the "investigatory and conciliatory procedures" of the EEOC, and therefore sufficiently alleged a claim related to sexual discrimination. *See Pacheco,* 448 F.3d at 792 ("[W]e do not require that a Title VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency."); *see also Davis v. Wal-Mart Stores, Inc*., 2007 WL 836860, at *11 (N.D. Tex. Mar. 19, 2007) ("The substance of an EEOC charge, not its form, is the key characteristic for analysis.").

### 2. Adverse Employment Action

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–

---

3 To establish a prima facie case of wage discrimination under Title VII, "a plaintiff must show that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility." *Fields v. Stephen F. Austin State Univ*., 611 Fed.Appx. 830, 831 (5th Cir. 2015). She also "must show that [her] circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.*

4 To establish a prima facie case under the Equal Pay Act, a plaintiff must show that: "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than an employee of the opposite sex providing the basis of comparison." *Fields*, 611 Fed.Appx. at 832.

2(a)(1). To establish a discrimination claim under Title VII, a plaintiff must prove that he or she was subject to an "adverse employment action"—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

"Adverse employment actions consist of ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell, Inc*., 361 F.3d 272, 282 (5th Cir.2004).

Cox contends that Plaintiff's allegations fail to rise to the level of an adverse employment action. Cox argues that Plaintiff makes no allegation of any decision that caused her to suffer a demotion or reduction in job title or any decision that affected her job duties. Cox characterizes Plaintiff's allegations regarding the actions taken by her Local Sales Manager as "account assignments." Citing *Wayne V. Dallas Morning News*, Cox asserts that "[A]ccount assignments are administrative decisions not properly characterized as 'ultimate employment decisions.'" *Id.*, 78 F. Supp.2d 571, 584 (N.D. Tex. Nov. 24, 1999).

Plaintiff does not dispute the general principle stated in *Wayne*—that "account assignments are administrative decisions not properly characterized as "ultimate

employment decisions." Rather, Plaintiff argues that Cox failed to provide the Court with the complete holding relevant to this case. The Court agrees. In *Wayne* the court further stated "[the defendant's] actions with respect to account assignments could rise to the level of an ultimate employment decision if the assignment of accounts affected the compensation paid to its sales representatives." *Id*. Here, the issue in this case is whether Cook, Plaintiff's supervisor, made or caused changes in Cox account assignments which directly affected the compensation paid to Plaintiff. *R. ¶¶ 19-29.* Plaintiff has alleged that Cox's decision to reassign the larger accounts to her white, male co-workers affected her compensation and lowered her employment benefits. In effect, Plaintiff alleges that her supervisor's actions caused her to receive less compensation and therefore suffer pay disparity based on her race and her sex despite performing the same job responsibilities as the white males in her same position.

The Court finds that Plaintiff has stated a plausible claim for discrimination based on her race and her sex under Title VII.

### 3. Retaliation Claim

To state a claim for retaliation, the plaintiff must demonstrate "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the

adverse employment action." An individual engaged in a protected activity if she: (i) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, or (ii) opposed any practice made an unlawful employment practice by Title VII. *Carter v. Target Corp.*, 541 Fed.Appx. 413, 418 (5th Cir. 2013) (citing 42 U.S.C. § 2000e–3(a)).

Cox contends that Plaintiff's allegations related to her retaliation claim are that she "complained about disparate treatment" and then "endured further adverse employment action." *R. 14, p. 4*. Cox further contends that such conclusory allegations fail to set forth the underlying facts necessary to satisfy the required elements for a retaliation claim. In particular it contends that Plaintiff failed to (1) identify the date of the alleged complaint; (2) to whom she reported the complaint; and, (3) the nature or substance of the alleged complaint. Cox argues that Plaintiff cannot establish the "causal link" element of her claim for retaliation. "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Nall v. BNSF Railway Company*, 912 F.3d 263, 276 (5th Cir. 2018).

While Cox cites paragraphs 84 and 85 of Plaintiff's complaint as setting forth her retaliation claims, the Court finds that paragraphs 39 through 46 of her complaint provide more specific allegations as to whom she "complained about her disparate

treatment," the "further adverse employment actions" and how she "was not given a

proper opportunity to work with the Local Sales Manager for improvement":

> 39. [She] spoke to Human Resources and the Vice President's office about these racial issues.

> 40. Instead of getting better, they got worse. HR did not even address the issues, but instead accused [Plaintiff] of having low self-esteem and directed her to keep working.

> 41. The Local Sales Manager is supposed to spend time with each Account Executive/Sales Manager and discuss ways to improve and performance.

> 42. During these meetings the Manager will engage with the subordinate.

> 43. When it is [Plaintiff's] turn for these meetings, the Manager will take other calls and will refuse to speak with [Plaintiff] or provide any advice.

> 44. Additionally, Gwen Cook, the Local Sales Manager, would go on sales calls with [Plaintiff's] white peers for purposes of training and development but would not do so for [Plaintiff].

> 45. The redirecting of accounts has continued and not gotten any better.

> 46. Instead, Gwen Cook has been on a campaign to retroactively make it appear as though [Plaintiff] was a sub-employee, an allegation that bears no relationship to fact.

Paragraphs 39, 40, and 45, read within the context of the complaint as a whole, allege

that Plaintiff complained to a person in the Cox Human Resources office and the

Vice President's office about her wage disparity caused by the discriminatory

actions taken by her supervisor, Cook. Plaintiff's EEOC Charge states that the discrimination began and ended on "October 1, 2017," but also states that she also reported to the Human Resources representative, Jackie Sonnier, in January 2018. *R. 9-2.* The complaint, however, provides no dates nor any time period during which the alleged retaliation occurred.

A "causal link" is shown if "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001)). Also, the "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). While temporal proximity, together with the factual content of a plaintiff's pleading, may be sufficient to support an inference that there was a causal link, the vague allegations in Plaintiff's complaint fail to provide sufficient evidence to support the causal link requirement.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) on pleading deficiency grounds without giving the plaintiff "at least one chance to amend." *Hernandez v. Ikon Office Solutions, Inc.*, 306 F. App'x 180, 182 (5th Cir. 2009); *accord Great Plains Trust Co. v. Morgan Stanley Dean*

*Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Accordingly, the Court will recommend that Plaintiff file a motion for leave to amend her complaint to clearly demonstrate that 'but for' the protected activity, the adverse employment action would not have occurred."

## B. Plaintiff's Equal Pay Act (EPA) Claim

The Equal Pay Act prohibits discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a prima facie violation of the Equal Pay Act, a plaintiff must show: (1) the employer is subject to the EPA; (2) the plaintiff performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) the plaintiff was paid less than members of the opposite sex providing the basis for comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). If the plaintiff establishes her prima facie case, the burden of proof shifts to the employer to show that the differential is justified under one of the four exceptions set forth in the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production;

or (4) any factor other than sex. *Siler-Kohdr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001); 29 U.S.C. § 206(d)(1). These exceptions are affirmative defenses as to which the employer has the burden of both production and persuasion. *Jones v. Flagship Int'l*, 793 F.2d 714, 722 (5th Cir. 1986). If the employer offers a defense, the plaintiff must then show that the purported reason is a pretext for discrimination. *Browning v. Southwest Research Inst.*, 288 Fed.Appx. 170, 174 (5th Cir. 2008).

Cox contends that because Plaintiff's pay is admittedly "directly related to sales," she does not and cannot suggest that Cox applied one formula to her but a different formula to the relevant male employees. *R. 9-1, p.* 6. Rather, Cox argues Plaintiff's "accounts did not generate the revenue that her male peer's accounts generated, so she made less." *Id.* Citing an unpublished Third Circuit opinion, *Garges v. People's Light & Theatre Co.*, 529 Fed.Appx. 156, 162 (3d Cir. 2013), Cox represents to the Court that "courts regularly dismiss EPA claims alleging differential pay resulting from application of the same formula to males and females." [5] The *Garges* opinion, however, was decided under a Rule 56 summary judgment standard in which the court found that the evidence showed that all similarly situated employees were paid based on the same commission formula,

---

5  The Court is unable to locate any Fifth Circuit case adhering to Cox's representation.

regardless of gender. Nonetheless, Plaintiff concedes that male and females employed by Cox received their compensation based upon the same formula. She alleges, however, that her Cox supervisor discriminatorily manipulated the accounts she managed in order for that same formula to result in her receiving less pay than her "white counterparts," *R. 1, ¶ 22*, and "white Account Executives/Sales Managers," *Id. at ¶25.*

Cox also states that Plaintiff "cannot simply rely on job titles" to establish that her position was similarly situated to her alleged male counterparts. In support of its position, Cox cites *Reznick v. Associated Orthopedics & Sports Medicine, P.A.*, 104 Fed.Appx. 387, 391, 2004 WL 1559571, at *4 (5th Cir. 2004) which was decided on summary judgment. In *Reznic*k, the evidence provided that a hand surgeon and a sports medicine surgeon did not hold "substantially equal" position because the sports medicine surgeon's higher pay was a reflection of his greater economic value. *Id.* While Cox contends that Plaintiff's Equal Pay Act claims should be dismissed based on the court's holding in Reznick, the Court finds that such a determination is neither feasible nor appropriate under the Rule 12(b)(6) standard in this case.

The Rule 12 standards require that a plaintiff plead specific facts entitling her to state a claim; a pleading that offers conclusory allegations or "formulaic recitation of a cause of action's elements" is insufficient. *See Twombly*, 550 U.S. at 545. The

Equal Pay Act requires a plaintiff to compare her skill, effort, responsibility, and salary with the employee of the opposite sex who is or was similarly situated. *Weaver v. Basic Energy Services., L.P.*, 2014 WL 12513180, at *6 (W.D. Tex. Jan. 8, 2014) (quoting *Jones*, 793 F.2d at 723). In pleading her prima facie case, "the employee need not prove that the duties performed are identical, but merely that the skill, effort and responsibility required in the performance of the jobs is (sic) substantially equal." *Blackburn v. Cypress Equities I, LP*, 2014 WL 4771765, at *5 (N.D. Tex. Sept. 25, 2014) (quoting *Pearce v. Wichita City., City of Wichita Falls, Texas, Hospital Board*, 590 F.2d 128, 133 (5th Cir. 1979)).

Plaintiff's statement that "white and male employees who earned substantially greater incomes performed job functions requiring equivalent or lesser skill, effort and responsibility," *R. 1, ¶74*, merely restates elements of the prima facie Equal Pay Act case and fails to set forth any facts to show that male co-workers receiving salary increases performed a substantially equal job to Plaintiff. Moreover, the factual allegations in the complaint fail to plead specific facts to show that the co-workers performing substantially equal jobs were in fact *males* and that these male comparators in fact *performed job functions requiring equivalent skill, effort, and responsibility* as Plaintiff. Plaintiff's complaint related to her wage disparity claims merely states that the accounts were given "to one of her counterparts," *Id. at ¶ 22,*

and large agencies "are redirected to white Account Executives/Sales Manages." *Id. at ¶25.*

Again, the Court will recommend that Plaintiff file an amended complaint to specify that *male* Cox employees receiving higher salaries performed job functions requiring *equivalent skill, effort, and responsibility as plaintiff* in her position as Account Executives/Sales Managers.

## C. The Louisiana Employment Discrimination Claims

Plaintiff also asserts claims for race and sex discrimination under state antidiscrimination law. The Louisiana Employment Discrimination Law, La. R.S. 23:301 ("LEDL") prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age, or national origin. The scope of the LEDL is the same as Title VII, and therefore, claims under the LEDL are analyzed under the Title VII framework and jurisprudential precedent. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

The LEDL requires a plaintiff who intends to pursue court action based on a claim of discrimination to provide the defendant with written notice of his claim at least thirty days before filing suit. La.R.S. § 23:303(C). Under this requirement, "both parties shall make a good faith effort to resolve the dispute prior to initiating court action." *Id*. Failure to comply with Section 303(C) renders the un-noticed

19

claims subject to dismissal without prejudice. *See, e.g., Kern v. Ingevity Corp*., 2017 WL 4679460, at *3 (W.D.La., 2017). Filing a discrimination charge with the EEOC satisfies the notice requirement. *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 700 (W.D. La., 2011).

Cox argues that Plaintiff did not raise a sex discrimination claim in her EEOC Charge, and therefore, she cannot rely on that Charge to satisfy LEDL's pre-suit demand requirement to support a sex discrimination claim. As provided in the foregoing, however, the Court has determined that Plaintiff's EEOC Charge should be construed to find that she asserted a discrimination claim based on her sex as well as her race.

## IV. CONCLUSION

Based on the foregoing, the Court recommends that the Motion to Dismiss filed by Cox [Rec. Doc. 9] be DENIED IN PART as to Plaintiff's Title VII and LEDL claims of race and sex discrimination and DENIED WITHOUT PREJUDICE to Cox's right to reurge, if appropriate, after Plaintiff files her Amended Complaint regarding her Retaliation Claim and her Equal Pay Act Claim, as set out in this Report and Recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

SIGNED this 12th day of February, 2019 at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**